Andrew M. Purdy (State Bar No. 261912)
*andrew@bnsklaw.com*
**BROWN, NERI, SMITH & KAHN, LLP**
650 Town Center Drive, Suite 520
Costa Mesa, CA 92626
Telephone: (949) 676-0030

Adam E. Polk (State Bar No. 273000)
*apolk@girardsharp.com*
Simon S. Grille (State Bar No. 294914)
*sgrille@girardsharp.com*
Nina Gliozzo (State Bar No. 333569)
*ngliozzo@girardsharp.com*
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Attorneys for Plaintiffs*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN AHRINGER AND MICHAEL DONNER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LOANDEPOT, INC. and VERISK ANALYTICS, INC. D/B/A JORNAYA, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A).

2.     LoanDepot, Inc. ("LoanDepot") offers consumers instant quotes on mortgage and non-mortgage lending products after they complete forms on LoanDepot's website, www.LoanDepot.com, by entering personally identifiable information ("PII") and other private, sensitive information about themselves and their financial histories.

3.     Verisk Analytics, Inc., d/b/a Jornaya ("Jornaya"), sells software that records consumer interactions with a website in real time. Website owners can use this software by adding Jornaya's javascript[1] into the source code of their webpages. Doing so permits both Jornaya and the website owner to record a visitor's keystrokes and other actions on the website.

4.     LoanDepot has embedded Jornaya's software in the computer code on its website to optimize its lead generation efforts, among other things. LoanDepot benefits financially from collecting information provided by potential customers, or "leads," who indicate an interest in applying for financial services such as home equity loans. Implementing Jornaya's software has allowed both companies to surreptitiously observe, record, store, and use visitors' keystrokes, mouse clicks, and other electronic communications, including their entry of PII and other private, sensitive information.

5.     When users seeking a financial services quote enter private information on LoanDepot.com, LoanDepot shares those communications with Jornaya in real time, before notifying users or obtaining their consent. The communications LoanDepot shares with Jornaya include users' private personal and financial information, such as name, email address, geolocation, and other categories of information. Jornaya's software purports to increase the value of LoanDepot's leads by harvesting extra information about each person and independently documenting the information they provided.

---

[1] JavaScript is a programming language commonly used in website development to add features and functions to a website.

CLASS ACTION COMPLAINT

6.     By wiretapping website users' communications, Defendants LoanDepot and Jornaya violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, and invade Plaintiffs' and class members' privacy rights in violation of the California Constitution.

7.     Plaintiffs Justin Ahringer and Michael Donner each used the LoanDepot website to search for a loan, entering private information into the online form at LoanDepot.com. During each visit, Defendants LoanDepot and Jornaya recorded Plaintiffs' electronic communications in real time and used the intercepted data to learn their respective identities, addresses, and other private, sensitive information without their consent.

8.     Plaintiffs bring this action on behalf of themselves and a class of all individuals whose electronic communications were intercepted through LoanDepot's use of Jornaya software on its website.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

10.    This Court has personal jurisdiction over Defendants because LoanDepot is headquartered in California, each of the Defendants purposefully availed itself of the laws and benefits of doing business in California, and Plaintiffs' claims arise out of each of the Defendants' forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

11.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## THE PARTIES

12.     Plaintiff Justin Ahringer is a citizen of the State of Florida and resides in Margate, Florida.

13.     Plaintiff Michael Donner is a citizen of the State of Virginia and resides in Moneta, Virginia.

14.     Defendant LoanDepot, Inc. is a Delaware company with its principal place of business at 26642 Towne Center Drive, Foothill Ranch, California 92610.

15.     LoanDepot is the third-largest private, independent retail mortgage and residential lender in the United States. LoanDepot currently has over 700 licensed loan officers serving in all fifty states.

16.     In 2021 LoanDepot "[s]uccessfully conclude[d] its first year as a public company" and "[a]chieved market share growth of 3.4% . . .  up from 2.5% in 2020." LoanDepot reported $705 million of revenue that quarter and ended 2021 "with a servicing portfolio of $162.1 billion."[2]

17.     LoanDepot does business throughout California and the entire United States.

18.     LoanDepot owns and operates the website www.LoanDepot.com.

19.     Defendant Verisk Analytics, Inc. d/b/a Jornaya is a New Jersey corporation with its principal place of business at 545 Washington Boulevard, Jersey City, New Jersey 07310.

20.     Jornaya is a software-as-a-service ("SaaS") company. Jornaya claims that it is "the leader in behavioral data, marketing intelligence, and compliance with a proprietary view of more than 500 million consumer journeys every month." It further represents that "[c]ompanies work with us to receive early behavioral buying signals on their customers

---

[2] https://investors.loandepot.com/news/corporate-and-financial-news/corporate-and-financial-news-details/2022/loanDepot-announces-year-end-and-fourth-quarter-2021-financial-results/default.aspx.

CLASS ACTION COMPLAINT

and prospects," which in turn "improves the timing, messaging, and efficiency of their marketing outreach."[3]

21.    In connection with its services to website operators, Jornaya provides a product called "LeadiD," which monitors and records website users' activity on a webpage. LeadiD purports to increase the value of leads generated on third party websites by independently documenting the information each lead provides and harvesting additional information about them such as IP address and geolocation.

## FACTUAL ALLEGATIONS

### I.    Jornaya Offers LeadiD Lead Generation Software.

22.    Defendant Jornaya provides a variety of "real time" products for companies that generate online leads for products or services or that engage in telemarketing.







**LeadiD Lets You Provide Your Lead Buyers With A Transparent History of the Consumer Journey**   **LeadiD Captures Consumer Consent + Behavior For Every Lead for Lead Buyer Transparency**   **Expand Your Reach By Joining Our Growing Network Of Publishers, Lead Sellers + Performance Marketers**

23.    Jornaya touts LeadiD as a "unique identifier that's generated the moment a customer lands on a webpage where [the] script is installed." LeadiD purports to "provide qualified leads that are prime to convert" by "**witness[ing] [the customer's] interactions and collect[ing] data related to their experience . . . as a customer continues their journey on [the] site**."[4]

24.    Jornaya says that one of the key features and benefits of LeadiD is that it "**captures a detailed view of the actions the customer took on the lead form and the journey the lead took**" so that companies buying leads can make informed decisions about

---

[3] https://www.jornaya.com/company/.

[4] https://www.jornaya.com/products/leadid-create (emphasis added).

CLASS ACTION COMPLAINT

1  lead purchases and "re-invest spend from lower-performing segments to optimize budgets

2  + drive higher ROI."[5]

3      25.    Jornaya advertises the various "real time" data points that LeadiD can acquire,

4  including the "origin," of users, "duration" filling out the form, and the number of

5  competitors who also received the lead:



6

7

8

9

10

11

12

13

14

15

16

17     26.    Jornaya instructs its partners to "implement the Jornaya campaign script" to

18  their webpages to start capturing leads.[6] As soon as the LeadiD script is added, Jornaya

19  automatically captures the information submitted in the respective forms and otherwise

20  observed from users' sessions.

21     27.    The code allows Jornaya to record the keystrokes (including substantive and

22  meaningful words, phrases, and numeric combinations and values), mouse clicks, data

23  entry, and other electronic communications of visitors to websites where the code is

24  installed. It also allows Jornaya to track the "website of origin" (the website from which a

25  user navigated to the website using LeadiD, *i.e.*, part of the visitor's internet browsing

26

27  _____

28  [5] https://www.jornaya.com/products/leadid-intelligence (emphasis added).

   [6] https://docs.jornaya.com/v1/docs/getting-started-with-create.

history), amount of time spent on the website, geographic location of the visitor, and other information described above.

28.    Jornaya, in turn, provides this data to its clients—including LoanDepot—in the form of "leads," which its clients then use for their own marketing purposes and sell to third-party companies for use in cold calling and otherwise soliciting consumers—unprompted—with various offerings.

29.    The recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with a webpage using LeadiD.[7]

30.    In a 2017 study by Princeton University researchers concerning similar session recording technology, the researchers noted that "the extent of data collected by these services far exceeds user expectations; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user."[8]

31.    All videos of customer data are hosted on Jornaya's servers, not the servers or computers of Jornaya's clients. Accessing the video of a website visitor's interactions requires a unique URL link provided by Jornaya, which directs visitors to a web server where the video can be viewed. The link corresponds with a unique ID and a "certificate" which are generated and issued by Jornaya.

32.    Jornaya's "patented LeadiD technology now resides on more than 55,000 different websites where consumers evaluate some of the biggest purchase decisions of their lives."[9] Jornaya advertises that it "witnesses billions of major purchase events every year across banking, mortgage, insurance, education, and more."[10]

---

[7] https://www.jornaya.com/products/leadid-create.

[8] https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

[9] https://www.jornaya.com/company/our-data/.

[10] https://resources.jornaya.com/pdf/consumer-behavior-insider-april-2021.

CLASS ACTION COMPLAINT

33.     Jornaya's business model involves entering into mutually beneficial financial partnerships with various companies. Pursuant to these relationships, Jornaya sells its software and related services, such as lead generation, to its partners, thereby earning revenue. Its partners also benefit from the services by, among other things, enhancing their marketing efforts and increasing their own revenues through the sale of customer leads to third party lead buyers.

34.     One of Jornaya's partners is LoanDepot. Both Jornaya and LoanDepot benefit financially from LoanDepot's use of LeadiD.

35.     Jornaya has benefitted financially from LoanDepot's purchase of its software and related services associated with LeadiD, including lead generation.

36.     LoanDepot has benefitted financially from sharing its users' data with Jornaya. "Certifying" leads and harvesting extra data about their users increases the value of the leads, which LoanDepot monetizes by selling to lead buyers.

**II.     LoanDepot Uses Jornaya's LeadiD Software.**

37.     LoanDepot offers a variety of financial services including mortgages, refinancing loans, home equity loans, and credit monitoring.



38.     To obtain a rate or initiate an application for any of the aforementioned services, a consumer fills out a form online at LoanDepot.com and provides information about their identity, including their name, street address, and email address.

7

39.     **Home Purchase.** LoanDepot advertises mortgage loans that "redefin[e] the home purchasing experience."[11] To obtain a mortgage quote, users are prompted to select the "Get Started" button, shown below.



40.     After selecting the "Get Started" button, users are prompted to fill out the following data fields, among others:

        a.  First and last name

        b.  Phone number

        c.  Email address

        d.  Credit score

        e.  Property zip code

        f.  Estimated purchase price

        g.  Down payment amount

41.     Users are not required to consent to a Privacy Policy before progressing through the various screens. Specifically, users are not required to consent to—nor have they given their consent to—Jornaya's access and recording of their sessions on LoanDepot's website before inputting various personally identifiable information.

42.     It is only when a user arrives at the final screen—at which point they have already entered their phone number and other sensitive PII—are they prompted to consent by clicking "continue." However, Jornaya has already captured and recorded all of the data the user has inputted into the form up until that point.

---

[11] https://www.loandepot.com/buying-a-house.

CLASS ACTION COMPLAINT

43.     **Home Refinance.** LoanDepot gives users the opportunity to refinance their homes to "lower payments," "consolidate debt" or "pull cash out." To proceed, users are prompted to select the "Get Started" button, shown below.



44.     After selecting the "Get Started" button, users are prompted to fill out the following data fields, among others:

        a.  First and last name

        b.  Phone number

        c.  Email address

        d.  Credit score

        e.  Property zip code

        f.  Amount remaining on mortgage

45.     Users are not required to consent to a Privacy Policy before progressing through the various screens. Specifically, users are not required to consent to—nor have they given their consent to—Jornaya's access and recording of their sessions on LoanDepot's website before inputting various personally identifiable information.

46.     LoanDepot uses LeadiD on LoanDepot.com and has done so since approximately September 30, 2015.

CLASS ACTION COMPLAINT

47.     LeadiD's code is embedded into the source code of LoanDepot's website, as shown in the red box below:



48.     An ordinary consumer would not know—and nothing on the face of LoanDepot.com gives any indication—that their answers to the aforementioned data prompts are being recorded or shared with a third party.

49.     Without the consent of users, LoanDepot enables Jornaya to monitor users' interactions with the site as they provide a variety of categories of PII and other private, sensitive information on its website during the application process across offerings, including:

       a.   First and Last Name

       b.   Email Address

       c.   Mobile Number

       d.   Street Address

       e.   Credit Score

50.     At no point is a user required to consent to a Privacy Policy or any other type of disclosure *before* providing PII.

CLASS ACTION COMPLAINT

51.     To access a refinancing or home purchase quote, for example, it is only after the consumer has provided a variety of information, *all of which has been recorded in real time*, does LoanDepot inform the consumer that by clicking "Continue," they are authorizing LoanDepot and its partners to engage in "telemarking promotions" for various products.



**REFINANCE: 5 OF 6**

# Where can we reach you?

Phone

ⓘ We'll use this number to connect you with a loan officer in your area. It will not be shared or sold.

CONTINUE

By clicking "continue", you are authorizing loanDepot.com, LLC and its corporate parents, affiliates and partners to deliver or cause to be delivered to you (including through agents and authorized third-parties) telemarketing promotions for products or services in addition to those about which you are applying, but that may be of interest to you using an automatic telephone dialing system or an artificial or prerecorded voice and text messages to the phone numbers you provided above. You are not required to sign this agreement as a condition of purchasing any property, goods, or services.

52.     The above prompt occurs when the consumer reaches step "5 of 6" in the refinance quote process, and after the consumer has already provided their zip code, amount remaining on mortgage, credit score, and first and last name. The prompt also makes no mention of a Privacy Policy and fails to give consumers adequate notice that

11

CLASS ACTION COMPLAINT

their responses to that point have been intercepted, nor that if they answer additional questions their activity will continue to be intercepted.

53.     LoanDepot knows that LeadiD captures the keystrokes, mouse clicks, and other communications of visitors to its website. LoanDepot pays Jornaya to supply that information.

54.     Pursuant to an agreement with Jornaya, LoanDepot enabled LeadiD by voluntarily embedding Jornaya's software code on LoanDepot's website.

55.     As currently deployed, LeadiD, as used by LoanDepot, functions as a wiretap.

56.     The terms of use on LoanDepot's website provides that "This Agreement and the resolution of any dispute related to this Agreement or this Site shall be governed by and construed in accordance with the laws of California without giving effect to any principles of conflicts of law."[12]

57.     A user's personal information that is intercepted as a result of Defendants' wiretap has financial value. LoanDepot sells "leads" containing the intercepted information, and Jornaya's LeadiD product is designed to facilitate and increase the value of those sales.

58.     An older study valued users' web-browsing histories at $52 per year. The Organization for Economic Cooperation and Development likewise estimated the prices for various elements of personal data: $0.50 for an address, $2 for birthdate, $8 for a Social Security number, $3 for a driver's license number, and $35 for a military record.[13] More recent estimates suggest the value of personal data continues to be high: a personal email can be worth $89, a complete health care record $250, and a hacked Facebook account can

---

[12] https://www.loandepot.com/termsofuse.

[13] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD DIGITAL ECONOMY PAPERS, No. 220 (Apr. 2, 2013), https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.

CLASS ACTION COMPLAINT

Case 8:23-cv-00186-CJC-JDE   Document 1   Filed 01/30/23   Page 14 of 29   Page ID #:14

sell for $65 on the dark web.[14] Similarly, a 2019 report found that data generated from an adult is worth roughly $35 per month.[15]

59.    LoanDepot operates its digital consumer lending business and interacts with actual and potential customers during the loan application and approval process predominantly through its website and supporting technology platforms and infrastructure, all of which are operated and maintained in California.

60.    For example, in early 2017, LoanDepot "announced the launch of its proprietary digital lending platform (DLP)." The DLP, named "mello," "includes an intuitive web-based consumer portal, a state-of-the-art mobile point of sale system, and a fully digital mortgage loan application experience." Mello, the company further explained, "is an end-to-end technology solution designed to scale with the business as America's lender expands its product categories outside of home lending, its network as a service provider of credit-related products, and its joint venture partnerships." Mello would be "seamlessly integrated with the company's scalable web-based loan origination system (LOS), accessible to consumers and lending professionals via collaborative dashboards from mobile or desk top devices." The company promised that its DLP, then "in the works over the past 18 months," . . . "will evolve loan origination to become a fully digital practice on a massive scale that intuitively becomes a faster, easier, and more accurate experience with greater certainty."[16]

61.    LoanDepot's initial promise for mello has become a reality. In the "About Us" section of its website, the company states that it is "Powered by mello® Technology." It then states: "Delivering a digital mortgage experience that enables you to be served quickly

[14] https://www.invisibly.com/learn-blog/how-much-is-data-worth/ (last accessed January 30, 2023).

[15] https://www.vox.com/recode/2019/6/24/18715421/internet-free-data-ads-cost (last accessed January 30, 2023).

[16] http://media.loandepot.com/2017-03-06-loanDepot-Developing-Fintech-Ecosystem-Of-The-Future.

13

CLASS ACTION COMPLAINT

and easily is our top priority. Our proprietary mello® software platform powers every loan transaction, and, together with our mello smartloan—our end-to-end fully digital mortgage that can, in most cases, seamlessly and securely collect your income, employment and asset information—we can ensure that your transactions with us are fast, straightforward and hassle-free."

62.     The company's most recent annual report echoes the importance and prominence the digital lending platform has for its business: "We have built a leading technology platform, designed around the consumer that has redefined the mortgage process. Our digital-first approach has allowed us to become one of the fastest-growing, at-scale mortgage originators in the United States of America.[17]

63.     LoanDepot's DLP is located and staffed in California. Indeed, as of early 2017, LoanDepot had "committed to opening the new 65,000 square foot mello tech campus in Irvine, California." "It will be at this newest technology campus," the company stated, "where LoanDepot's 400+ LD Tech team continues its work of transforming the future of modern lending."[18]

64.     LoanDepot employs lending professionals and operates branch locations in California and across the country. At all of the company's physical locations, inside and outside of California, its lenders utilize the same DLP, "[p]owered by mello® Technology," that is operated and maintained in California. As Dominick Marchetti, LoanDepot's former Chief Technology Officer, previously noted: "Ultimately, the complexities of the technology we've engineered to operate silently in the background make the front-end experience easier, faster, and with little to no friction for the user. The reality is that when experienced loan officers use the best technology available to help the

---

[17] https://s27.q4cdn.com/834830848/files/doc_financials/2021/ar/2021-Annual-Report.pdf.

[18] http://media.loandepot.com/2017-03-06-loanDepot-Developing-Fintech-Ecosystem-Of-The-Future.

CLASS ACTION COMPLAINT

consumer access credit, it has the opportunity to change the industry for the better. That's powerful."[19]

65.     LoanDepot has embedded Jornaya's session recording software in the computer code on its website, through which it operates its digital lending business and platform to consumers in California and across the country.

### III.   Defendants Wiretapped Plaintiffs' Electronic Communications

#### Justin Ahringer

66.     Within the last year, Justin Ahringer used the LoanDepot website to search for and apply for loans, including personal loans.

67.     During Justin Ahringer's session(s) on LoanDepot's website, he filled out the required forms on the website to apply for a loan. In doing so, he provided at least the following categories of information: name, date of birth, social security number, physical address, and email address.

68.     During his visit, LoanDepot and Jornaya accessed and recorded Justin Ahringer's electronic communications, including the information described above, in real time. In doing so, they used the intercepted data to attempt to learn the identity, zip code, date of birth, and other PII and private, sensitive information of Justin Ahringer.

69.     Justin Ahringer was unaware at the time that his keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and would be disclosed to Jornaya. Nor did Justin Ahringer consent to share that private information with Jornaya.

#### Michael Donner

70.     Within the last year, Michael Donner used the LoanDepot website to apply for loans, including home equity and personal loans.

71.     During Michael Donner's session(s) on LoanDepot's website, he filled out the required forms on the website in order to obtain a home equity loan and a personal loan. In

---

[19] http://media.loandepot.com/2017-03-06-loanDepot-Developing-Fintech-Ecosystem-Of-The-Future.

doing so, he provided at least the following categories of information: first and last name, phone number, email address, credit score, property zip code, amount remaining on mortgage, home value, household income, and disability status.

72.     During his visit, LoanDepot and Jornaya accessed and recorded Michael Donner's electronic communications, including the information described above, in real time. In doing so, they used the intercepted data to attempt to learn the identity, zip code, date of birth, and other PII and private, sensitive information of Michael Donner.

73.     Michael Donner was unaware at the time that his keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and would be disclosed to Jornaya. Nor did Michael Donner consent to share that private information with Jornaya.

**All Plaintiffs and Class Members**

74.     During each Plaintiff's visit, the Jornaya LeadiD feature created a video capturing Plaintiffs' keystrokes, mouse clicks, and all other actions taken on the website. Jornaya also captured the date and time of each visit, the duration of the visit, Plaintiffs' IP addresses, their locations at the time of the visit, browser types, and the operating systems on their devices.

75.     Users, including Plaintiffs, did not receive notice of, nor consent to, Jornaya's interception or recording of their sessions on LoanDepot's website when they click "Get Started" on the Home Purchase or Home Refinance pages, "Check My Rate" on the Home Equity page, or similar buttons to initiate the quote or application process for any other financial service offered on its website, even though doing so initiated the interception of their communications on the site, including the information and content input on the various forms.

76.     LoanDepot did not notify visitors to its websites that their keystrokes, mouse clicks and other communications were being recorded and shared with Jornaya. Even LoanDepot's more limited disclosures, which were still insufficient, were made *after* the interception had already begun.

77.     No Plaintiff or Class member consented to their session being recorded on a LoanDepot website or to the recording and sharing of their communications with Jornaya. Furthermore, any purported consent was ineffective because (i) the recording began from the moment Plaintiffs and Class members accessed the Website; and (ii) the Privacy Policy did not disclose the recording or Jornaya.

78.     At no time before or during a user's browsing of its websites does LoanDepot disclose that it will record users' activities in real time.

79.     Nor does LoanDepot's Privacy Policy disclose that it is recording a user's activities in real time. Even if LoanDepot had disclosed the conduct at issue in its Privacy Policy, LoanDepot still acted without consent because LoanDepot does not ask for users' consent before it begins recording their activities.

80.     Plaintiffs and Class members were not provided with such an "explicit website disclosure," nor was the Joranya LeadiD JavaScript loaded only after consumers accepted LoanDepot's Privacy Policy.

## TOLLING OF THE STATUTES OF LIMITATIONS

81.     All applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered Defendants' practices of sharing their PII until shortly before this class action litigation commenced. LoanDepot was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing PII to Jornaya. As a result of the active concealment by LoanDepot, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

82.     Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of a nationwide class of individuals who visited LoanDepot.com and provided personal information on LoanDepot's forms to receive a quote or apply for any mortgage, loan, or other service

offered on the website during the period when LoanDepot used Jornaya's LeadiD session recording software on its website.

83.   A nationwide class applying California law is appropriate given that LoanDepot's terms of use contain a California choice of law provision, and LoanDepot is headquartered in California and its misconduct originated in California.

84.   The "Class Period" is from September 30, 2015 to the present.

85.   Plaintiffs reserve the right to modify, change, or expand the class definition as appropriate based on further investigation and discovery obtained in the case.

86.    Excluded from the Class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel.

87.   **Numerosity**: The Class consists of at least thousands of individuals geographically dispersed, making joinder impractical.

88.   **Commonality and predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

   a.   whether Defendant LoanDepot violated one or more provisions of § 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, et seq.;

   b.   whether Defendant Jornaya violated one or more provisions of § 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, et seq.;

   c.   whether Defendant LoanDepot invaded Plaintiffs' privacy rights in violation of the California Constitution;

   d.   whether Defendant Jornaya invaded Plaintiffs' privacy rights in violation of the California Constitution;

   e.   whether Defendant LoanDepot was unjustly enriched as a result of sharing or otherwise using users' personal information;

CLASS ACTION COMPLAINT

f.  whether Defendant Jornaya was unjustly enriched as a result of sharing or otherwise using users' personal information;

g.  whether Class members are entitled to actual or statutory damages for the aforementioned violations; and

h.  whether Defendants should be enjoined from engaging in such conduct in the future.

89.  **Typicality**: The claims of the Plaintiffs are typical of the claims of the Class because the Plaintiffs, like all other Class members, visited LoanDepot's website and had their electronic communications intercepted and disclosed to Jornaya through LoanDepot's use of LeadiD.

90.  **Adequacy of representation**: Plaintiffs and their counsel will fairly and adequately protect and advance the interests of Class members. Plaintiffs' interests align with the interests of the Class members they seek to represent. Plaintiffs have retained competent counsel experienced in prosecuting class actions and intend to prosecute this action vigorously.

91.  **Superiority**: The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. The claims of each individual Class member are too small to make individual litigation realistic or feasible. The class action device also presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

92.  **Injunctive relief**: Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

# COUNT I

## Violation of the California Invasion of Privacy Act ("CIPA")

## Cal. Penal Code § 631

93.     Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

94.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

95.     To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*

CLASS ACTION COMPLAINT

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned in the above section.

96.    Section 631(a) is not limited to phone lines but also applies to newer technologies such as computers, the Internet, and email.

97.    CIPA provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation." Cal. Penal Code § 637.2(a).

98.    Jornaya's LeadiD product is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue.

99.    Jornaya's LeadiD product intercepts Class members' communications in transit while passing over the lines of internet communication by recording them in real time as the user enters information, even before the user clicks a button to submit the completed form to LoanDepot though its website.

100.    **LoanDepot's Violations**: At all relevant times, by using Jornaya's LeadiD technology, LoanDepot:

    a.    intentionally tapped or made an unauthorized connection with, electrically or otherwise, the lines of internet communication between Plaintiffs and Class members on the one hand, and LoanDepot's website on the other hand; and

    b.    aided, agreed with, employed, and conspired with Jornaya to implement Jornaya's technology and to accomplish the wrongful conduct at issue here.

101.    **Jornaya's Violations**: At all relevant times, by providing LeadiD service to LoanDepot, Jornaya:

    a.    intentionally tapped or made an unauthorized connection with, electrically or otherwise, the lines of internet communication between Plaintiffs and

21

Class members on the one hand, and LoanDepot's website on the other hand;

b.   willfully and without the consent of all parties to the communication, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and Class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

102.   Plaintiffs and Class members did not consent to any of Defendants' violations of the CIPA as alleged above, including any of their actions in implementing Jornaya's wiretaps on LoanDepot's website or their intentional access, interception, reading, learning, recording, and collection of Plaintiffs' and Class members' electronic communications.

103.   Defendants' violation of section 631(a) constitutes an invasion of privacy.

104.   Unless enjoined, Defendants will continue to commit these illegal acts. Plaintiffs and other members of the Class continue to use or desire to use the internet, including LoanDepot's website, to search for information about and shop for loans and various other financial services, but they do not want their provision of personal data informing a financial service quote or application to be wiretapped again.

105.   Plaintiffs and Class members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT II

### Violation of California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code § 17200 *et seq*.

106.   Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

107.   Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

108.    Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

CLASS ACTION COMPLAINT

109.   The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

## Unlawful Conduct

110.   Defendants' conduct is unlawful, in violation of the UCL, because as set forth herein, it violates CIPA, Cal. Penal Code § 631, and Plaintiffs' and Class members' privacy rights under the California Constitution. Defendants are therefore in violation of the "unlawful" prong of the UCL.

## Unfair Conduct

111.   Defendants' conduct is unfair because it violates California's constitutionally and legislatively declared public policy in favor of protection of consumer privacy, including as is reflected in the CIPA and the California Constitution.

112.   Defendants acted in an immoral, unethical, oppressive, and unscrupulous manner by, among other things, knowingly wiretapping or aiding the wiretapping of Plaintiffs' and Class member's communications of their private personal information without their consent.

113.   The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of wiretapping private communications, including confidential PII, harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests. For example, LoanDepot could obtain a user's fully informed consent to share their data with a third party before doing so, such as by disclosing this conduct through a pop-up screen that users would need to read and accept before accessing content on its website. Similarly, by way of example, Jornaya could require affirmative user consent before recording consumer communications via LeadiD, such as by programming it into the underlying computer code provided to all of its partners.

114.   The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.  Plaintiffs and Class members had no reasonable means of discovering that

CLASS ACTION COMPLAINT

Defendants were wiretapping Plaintiffs' and Class members' communications of their private information on LoanDepot.com.

115.   Plaintiffs and Class members have suffered an economic loss in the value of their personal and private information. The personal information intercepted here has concrete monetary value, as demonstrated by the fact that LoanDepot uses and sells this exact information as "leads," and Jornaya's LeadiD product is designed to facilitate and increase the value of those sales. Plaintiffs have suffered harm in the form of diminution of the value of their private and personally identifiable data and content, and Defendants have been unjustly enriched through the collection and monetization of that information.

116.   Plaintiffs and Class members have no adequate remedy at law as they are unable to use LoanDepot's website without being wiretapped or knowing whether they are being wiretapped. Absent injunctive relief, Defendants' violations will continue to harm consumers.

117.   Unless enjoined, Defendants will continue to commit these illegal acts. Plaintiffs and other members of the Class continue to use and desire to use the internet, including LoanDepot's website, to search for information about and shop for loans and various other financial services, but they do not want their provision of personal data to be wiretapped again.

118.   Plaintiffs and Class members seek appropriate relief under the UCL, including such orders as may be necessary to enjoin Defendants from continuing their unlawful and unfair acts or practices, and an order requiring Defendants to remove LeadiD from LoanDepot.com or to obtain fully informed consent from users before accessing, recording, or otherwise using any of their confidential information obtained from their sessions on the website.

119.   Plaintiffs and Class members seek all monetary and non-monetary relief permitted by law, including injunctive relief, civil penalties, and attorneys' fees and costs under Code of Civil Procedure section 1021.5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT III

### Invasion of Privacy

### California Constitution, Art. 1, § 1

120.   Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

121.   Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

122.   Plaintiffs and Class members have a strong interest in: (1) precluding the dissemination or misuse of their sensitive, confidential PII; and (2) making personal decisions or conducting personal activities without observation, intrusion or interference, including the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiffs' and Class members' knowledge or consent.

123.   Defendants wrongfully intruded upon Plaintiffs' and Class members' seclusion in violation of California law. Plaintiffs and Class members reasonably expected that the private personal information, including sensitive and confidential PII, that they entrusted to LoanDepot would be kept private and secure, and would not be disclosed to any unauthorized third party or for any improper purpose.

124.   At all relevant times, by implementing Jornaya's wiretaps on LoanDepot's website, each Defendant intentionally invaded Plaintiffs' and Class members' privacy rights under the California Constitution, and procured, aided, or enabled the other Defendant to do so.

125.   Defendants unlawfully invaded Plaintiffs' and Class members' privacy rights by:

      a.   harvesting their personal information, including sensitive, confidential PII, and transmitting it to unauthorized third parties or for improper purposes;

      b.   enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

25

CLASS ACTION COMPLAINT

c. enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

126. A reasonable person would find it highly offensive that Defendants received, collected, and stored Plaintiffs' and Class members' private personal information without their consent.

127. Plaintiffs and Class members did not consent to any of Defendants' alleged misconduct, including any of their actions in implementing Jornaya's wiretaps on LoanDepot's website or their intentional access, interception, reading, learning, recording, and collection of Plaintiffs' and Class members' electronic communications.

128. In failing to adequately protect Plaintiffs' and Class members' personal information, Defendants acted knowingly and in reckless disregard of their privacy rights. Defendants were aware that using LeadiD on LoanDepot.com would cause users' private information to be intercepted and recorded by and shared with Jornaya, an unauthorized third party. Nevertheless, LoanDepot chose to use, and Jornaya chose to make LeadiD available for use, on the website without users' consent. Defendants also knew or should have known that their conduct would be highly offensive to a reasonable person in Plaintiffs' position.

129. Defendants' unlawful invasions of privacy damaged Plaintiffs and Class members. As a direct and proximate result of these invasions, Plaintiffs and Class members suffered mental distress, and their reasonable expectations of privacy were frustrated and defeated.

130. This invasion of privacy is serious in nature, scope, and impact.

131. This invasion of privacy constitutes an egregious breach of the social norms underlying the privacy right.

132. Plaintiffs and Class members therefore seek all relief available for an invasion of privacy in violation of Article I, Section 1 of California's Constitution.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the Court enter judgment against Defendants through an order:

      a.    Certifying the Class under Rule 23 and naming Plaintiffs as the representatives of the Class and Plaintiffs' attorneys as Class Counsel;

      b.    Declaring that the Defendants' conduct violates the laws and standards referenced above;

      c.    Finding in favor of Plaintiffs and the Class on all counts asserted herein;

      d.    Granting Plaintiffs and the Class compensatory, statutory, or punitive damages or restitution;

      e.    Awarding prejudgment and post-judgment interest on all amounts awarded to the fullest extent allowed under the law;

      f.    Entering appropriate injunctive relief;

      g.    Awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs of suit; and

      h.    Such other and further relief as the Court deems necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims and issues so triable.

CLASS ACTION COMPLAINT

Dated: January 30, 2023

Respectfully submitted,

**BROWN, NERI, SMITH & KAHN, LLP**

*/s/ Andrew M. Purdy*
Andrew M. Purdy (State Bar No. 261912)
650 Town Center Drive, Suite 520
Costa Mesa, CA 92626
Tel.: (310) 593-9890
andrew@bnsklaw.com

Adam E. Polk (State Bar No. 273000)
apolk@girardsharp.com
Simon S. Grille (State Bar No. 294914)
sgrille@girardsharp.com
Nina Gliozzo (State Bar No. 333569)
ngliozzo@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Christopher J. Cormier (*Pro Hac Vice* to be filed)
ccormier@burnscharest.com
**BURNS CHAREST LLP**
4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977

Hannah M. Crowe (*Pro Hac Vice* to be filed)
hcrowe@burnscharest.com
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT